## BELFORD v. STATE.

### Opinion delivered October 17, 1910.

1.  COURTS—PLACE OF MEETING.—A court can meet only at the place that is appointed by law, and its judicial power can be exercised only at such place. (Page 278.)

2.  SAME—PLACE OF MEETING OF COUNTY COURT.—The county court of Clay County, under the act of February 23, 1881, meets only in the Eastern District of the county, and its jurisdiction extends over the entire county. (Page 278.)

3. COUNTY COURT—APPEALS.—Appeals from the county court of Clay County lie to the circuit court for the Eastern District of that county. (Page 279.)

4. BASTARDY—SUFFICIENCY OF EVIDENCE.—Proceedings to affiliate a bastard child being of a civil nature, the jury may find that the defendant is the father of the child upon the testimony of the mother alone. (Page 279.)

5. SAME—PROOF OF ILLICIT INTERCOURSE.—As it is not competent to impair the credit of a witness by proof of specific acts of immorality, it is not admissible to prove, in a proceeding to affiliate a bastard child, that the mother has had intercourse with others than the defendant, unless such testimony is confined to a period when in the course of nature the child could have been begotten. (Page 279.)

6. SAME—DISCRETION OF TRIAL COURT.—A judgment of the circuit court in a bastardy proceeding awarding the maximum amount allowed by law for lying-in expenses and maintenance of the child will not be reversed because there was no proof as to the amount of such expenses. (Page 280.)

Appeal from Clay Circuit Court, Eastern District; *Frank Smith,* Judge; affirmed.

*Moore & Bloodworth,* for appellant.

1. Since this is a civil action, and both parties reside in the Western District of Clay County, and the cause of action, if any, arose there, the circuit court of Clay County for the Eastern District was without jurisdiction. Acts 1881, p. 21, § § 3, 5, 6; 1 Words and Phrases, 493; 40 N. Y. Supp. 871-873, 8 App. Div. 444; 70 N. C. 137; 51 Pac. 256; 3 Fed. Cas. 796; 29 Ark. 62.

2. There is no evidence to support the jury's verdict for lying-in expenses and maintenance. There is no evidence that any lying-in expenses were incurred, or that anything was claimed on that account. Kirby's Dig. § 486; 88 Ark. 20 and cases cited; 5 Cyc. 669.

3. The court erred in excluding testimony offered to prove intercourse of prosecutrix with another party besides appellant prior and subsequent to the fall of 1906. Such proof was admissible for the purpose of impeachment, and because, the prior intercourse once proved, the presumption arises that the illicit relation continued during the period in question, while the subsequent intercourse, if proved, strengthens that presumption. 21 N. W. 161; 44 N. W. 824; 124 S. W. 766.

4. Appellant's defense was that he was not the father of

the child. In view of the testimony of the witness Compton that he had had intercourse with prosecutrix during the fall of 1906, appellant was entitled to an instruction embodying this defense. 124 S. W. 806. Where a woman has had intercourse with two or more men within the period when, in the ordinary course of nature, the child might have been begotten, she cannot testify who its father is. 3 Am. & Eng. Enc. of L. 882, and note p. 883; 47 Wis. 111.

*Hal L. Norwood,* Attorney General and *William H. Rector,* Assistant, for appellee.

1. In bastardy proceedings the general character of the prosecutrix is not in issue; and proof of acts of intercourse, prior to and subsequent to the time of conception is not admissible. 103 Mass. 46; 118 Mass. 602; 61 Ia. 538; 91 Ind. 82; 126 Mass. 176. Acts of intercourse with other men than the defendant are only admissible in evidence when they occurred within the period when the child might have been begotten. 68 Ind. 401.

2. Corroboration of the mother's testimony is not necessary. Kirby's Dig. § 492; Underhill on Crim. Ev. § 529; 5 Cyc. 664; 2 L. R. A. (N. S.) 619; 92 Ark. 200.

3. The court had jurisdiction. The act of February 23, 1881, makes no provision for two county courts, or for any change in the county court, which is held, and has been held since before the passage of the act, in the Eastern District of the county.

FRAUENTHAL, J. This was a proceeding to affiliate a bastard child to the defendant and to secure from the alleged father the lying-in expenses and the support of the child. It was begun in the county court of Clay County, and from an adverse judgment in that court the defendant filed an affidavit and prayer for appeal. The Clay County Court granted the appeal, and directed the clerk of said county court to transmit the papers in the proceedings and copies of the record entries to the circuit court of the Eastern District of Clay County, which was done, and the cause was duly docketed in that court. Thereupon the defendant filed a motion in the circuit court of the Eastern District of Clay County to transfer the cause to the circuit court of the Western District of said county for the reason that the defendant and mother of the child were resi-

dents of said Western District of Clay County, and the cause of action, if any, arose in said district. This motion was over-ruled, and the circuit court of the Eastern District of Clay County proceeded to try the matter, and in pursuance of a verdict of the jury adjudged that the defendant was the father of the child, and should pay the sum of $15 for lying-in expenses and three dollars per month for the support of the child.

By an act of the Legislature approved February 23, 1881, entitled "An act to establish separate courts in the county of Clay," it was provided that the county of Clay be divided into two judicial districts, to be called the Eastern District and the Western District; and therein the territory of said county comprising each of said districts was described. It provided that separate circuit, chancery and probate courts should be established in each of said districts. (Acts 1881, p. 21).

By section 3 of said act it was provided that "said circuit court of Clay County for the Western District shall have original and exclusive jurisdiction of all such cases as are now by law vested in the circuit courts of this State which have or may hereafter arise in said Western District. Provided, that no citizen or resident of said Eastern District shall be liable to be sued in said Western District, nor any citizen or resident of the Western District shall be liable to be sued in said Eastern District in any action whatever." By section 4 of the act it was provided that "the circuit court of the county of Clay, held at the county seat, shall have original and exclusive jurisdiction over the Eastern District." The act also provided that the circuit court for the Western District of said county should be held at Corning, which is located in said Western District, and that the circuit court for the Eastern District should be held at the county seat of said county, which is located in said Eastern District. The act made no provision, and assumed no power to make any provision, relative to the county court of said county; but by section 16 of said act it was provided "that, as to all matters not within the provisions of this act, the county of Clay shall be one entire and undivided county." And by section 5 of the act it was provided that, "in order to ascertain in which of the respective districts in said county actions in the circuit court shall be returnable and be tried, the said dis-

tricts for all the purposes of this act shall be considered as separate and distinct counties."

It will thus be seen that the place that had been established by law for the meeting of the Clay County Court prior to and after the passage of this act remained the same; and that was and continued to be at the county seat, which was and is located in the Eastern District of Clay County. A court has been defined to be a place where justice is judicially administered, and in order to constitute a court it must meet at the place that is appointed by law, and the judicial power of such court can be exercised only at such place. *Dunn* v. *State,* 2 Ark. 229; *Chaplin* v. *Holmes,* 27 Ark. 414; *Graham* v. *Parham,* 32 Ark. 676; *Neal* v. *Shinn,* 49 Ark. 227. So that the county court of Clay County could only exercise the judicial powers confided to its jurisdiction while sitting in the Eastern District of Clay County. The jurisdiction of the Clay County Court extends over the entire territory of Clay County, and by virtue of section 28 of art. 7 of the Constitution it has exclusive original jurisdiction in all matters relating to bastardy in said county, without regard to the district of the county in which the parties might reside or the child be born. Within the territory of the Eastern District of Clay County, therefore, the county court must exercise its original jurisdiction in bastardy matters, and in the exercise of that jurisdiction it takes no note of the districts into which the county is divided; but it has jurisdiction over all bastardy cases arising in any portion of Clay County. By section 489, Kirby's Digest, it is provided that "an appeal will lie from a judgment of the county court to the circuit court in all cases of bastardy, as in cases of appeal from judgments of justices of the peace to circuit courts."

It is to be presumed that a court will exercise no jurisdiction beyond its territorial limits, and so the circuit court of each county will not exercise jurisdiction over matters arising, or over inferior courts established, without the territorial limits of the county. And therefore appeals from the courts of justices of the peace and from county courts lie to the circuit court of the county in which such inferior courts are established and exercise the jurisdiction thereof. Kirby's Digest, § § 4665, 1310; *State* v. *Lancashire Ins. Co.,* 66 Ark. 466.

Now, by section 5 of this act it is provided that, in order to ascertain the respective jurisdictions of these two district circuit courts of Clay County, the said districts "shall be considered as separate and distinct counties." We conclude from this that appeals from all inferior courts in Clay County, including the county court, shall be taken to the circuit court in and for the district in which said court is established, and that this is the district in which is located the place where such inferior court is held and there exercises its jurisdiction.

It is urged that by section 3 of said act it is provided that the circuit court of Clay County for the Western District shall have original and exclusive jurisdiction of all cases which may arise in said Western District, and that the citizens resident in the Western District can be sued only in that district. But we think that this provision applies only to the original jurisdiction of that court and not to its appellate jurisdiction; and that the two district circuit courts would not have concurrent jurisdiction over such cases, but that such original jurisdiction in each district circuit court would be exclusive of the other.

It is urged that there is not sufficient evidence to sustain the verdict rendered herein; and in this connection it is suggested that the testimony of the prosecuting witness, the mother of the child, was not corroborated. But it has been held by this court that proceedings to affiliate a bastard child are of a civil nature, and that the jury may find that the accused is the father of the child upon the testimony of the mother alone. *Chambers* v. *State,* 45 Ark. 56; *Pearce* v. *State,* 55 Ark. 387; *State* v. *Blackburn,* 61 Ark. 407; *Wimberly* v. *State,* 90 Ark. 514; *Qualls* v. *State,* 92 Ark. 200.

We have examined the testimony introduced in this case, and we are of opinion that it is sufficient to sustain the verdict.

It is urged that the court erred in refusing to permit the introduction of testimony tending to prove acts of intercourse of the mother of the child with others than the defendant. But the court did permit the introduction of such testimony when confined to a period when in the course of nature the child could have been begotten; and testimony as to acts of intercourse had at other times was not admissible. 5 Cyc. 661. And it is not competent to impair the credit of a witness by proof of specific acts of immorality. *Ware* v. *State,* 91 Ark. 555.

It is urged that the verdict of the jury in fixing the amount of the lying-in expense at $15 and payments for support at $3 per month is not sustained by the evidence; and it is contended, in this connection, that no testimony was introduced showing the amount of the lying-in expenses that were incurred or of the amount that was necessary to support the child. The statute provides that if it is found that the defendant is the father of the child the court shall render judgment against him for the lying-in expenses for a sum not less than five dollars and not more than fifteen dollars, and also for a monthly sum of not less than one nor more than three dollars for the support of the child. Kirby's Digest, § 486. It will thus be seen that, although the lying-in expenses might be largely in excess of $15, yet the court cannot adjudge a recovery for a greater sum than $15 therefor; nor can it render a judgment for less than five dollars therefor, although the amount of the expenses thus incurred might be less than that sum. And this is likewise true as to the minimum and maximum amounts that can be adjudged for the monthly allowances. While, in determining the amount of these recoveries, it is proper to introduce evidence relative to the amount of the lying-in expenses that were actually incurred and as to the financial condition of the parties (*State* v. *Zeitler,* 35 Minn. 238; *Andrew G.* v. *Catherine A.,* 16 Fla. 830), yet the amount of the award that shall be made for those purposes must be confided largely to the discretion of the trial court. It is true that proceedings of this kind are held to be of a civil, rather than of a criminal, nature, and that the object of the statute is to obtain maintenance for the child, rather than punishment of the defendant, yet this court has held that the statute is also in the nature of a police regulation, and that the act of the putative father is regarded as an offense against the peace and good order of society. The statute has not named the sums recoverable as penalties, but it has fixed minimum and maximum amounts for such recoveries without necessarily regarding the amount of the actual expenses incurred or the sums required for the maintenance of the child. The statute has thus conferred upon the trial court great discretion in fixing these amounts in these proceedings. In the absence of all proof showing that the lower court has abused its dis-

cretion in this regard, we do not think it advisable to disturb its findings as to these amounts.   5 Cyc. 668; *Land* v. *State*, 84 Ark. 199; *Evarts* v. *Commonwealth*, 2 B. Mon. 55; *Dehler* v. *State*, 22 Ind. App. 385; *Rindskopf* v. *State*, 34 Wis. 217.

The judgment is affirmed.