## SCOTT v. STATE.

Opinion delivered April 11, 1927.

1. BASTARDS—NATURE OF BASTARDY PROCEEDING.—A prosecution for bastardy is a civil action, though properly brought in the name of the State and prosecuted by the prosecuting attorney, and a petition for change of venue must conform to the procedure in civil cases.

2. APPEAL AND ERROR—GENERAL EXCEPTIONS TO EVIDENCE.—Exceptions assigning error in admitting each and all the testimony admitted over appellant's objection, and excluding each and all of the testimony offered by defendant and excluded by the court, held too general.

3. BASTARDS—EVIDENCE.—In a bastardy prosecution, evidence that one doctor suggested to another that they get some person with money "to lay this child on" so they could get their fees, held properly excluded.

4. BASTARDS—EVIDENCE.—In a bastardy prosecution, evidence as to the position in which sexual intercourse was consummated, whether standing or lying down, was competent, and should have been admitted.

5. BASTARDY—EVIDENCE—NONACCESS OF HUSBAND.—In a bastardy prosecution, the prosecuting witness, being married, could not testify as to nonaccess of her husband.

6. BASTARDS—INSTRUCTION DISAPPROVED.—In a bastardy prosecution, where it appeared that the complaining witness was married at the time of conception, an instruction that the presumption of

legitimacy may be overcome by evidence, was erroneous in failing to require evidence of nonaccess of husband.

7.   BASTARDS—NONACCESS OF HUSBAND—BURDEN OF PROOF.—Evidence to charge defendant with paternity of a married woman's illegitimate child must show the impossibility of her husband's access by a preponderance of the evidence.

Appeal from Logan Circuit Court, Northern District; *James Cochran,* Judge; reversed.

*U. C. May* and *White & White,* for appellant.

*H. W. Applegate,* Attorney General, *Kincannon & Kincannon* and *Evans & Evans,* for appellee.

McHANEY, J.   This is a bastardy prosecution against appellant, begun on the first day of July, 1925, at Paris, in the Northern District of Logan County, on a complaint of Mabel Freeman, charging that appellant is the father of a bastard child born to her on the 9th day of January, 1925, and praying that he be required to pay the lying-in expenses and a monthly sum for the support of said child. The case was tried before a jury in the county court, which resulted in a mistrial, and was tried again on the 21st day of September, resulting in a verdict and judgment against him. An appeal was duly prosecuted to the circuit court, where appellant filed a petition for change of venue, which was overruled, and he was again tried by a jury in the circuit court, which resulted in a verdict and judgment against him for the sum of $15 lying-in expenses, and $3 per month for the support of the child for a period of seven years. Appellant, in due time, filed his motion for a new trial, which was overruled by the court, from which he prayed and was granted an appeal to this court.

The first assignment of error urged for consideration here is that the court erred in overruling his petition for a change of venue. Appellant seems to have regarded this case as a criminal prosecution, as his petition and affidavits for change of venue appear to have been drawn with the requirements of the criminal statutes in view, rather than the procedure for a change of venue in civil cases. This court has several times held

that a bastardy proceeding is of a civil nature, although properly brought in the name of the State and prosecuted by the prosecuting attorney. *Wimberly* v. *State,* 90 Ark. 514, 119 S. W. 668; *Belford* v. *State,* 96 Ark. 274, 131 S. W. 953; *Chambers* v. *State,* 45 Ark. 56; *Pearce* v. *State,* 55 Ark. 387, 18 S. W. 380.

At common law the mother was required to support her bastard child, and not the father, but the statutes of this State (§ 772 *et seq.,* C. & M. Digest), give the mother of such a child the right to require the father to contribute to its support, and implies an obligation and a promise on his part to help support it, and this court has held that she can enforce such a promise based upon moral obligations and a legal liability. *Davis* v. *Herrington,* 53 Ark. 5, 13 S. W. 215. Therefore a bastardy proceeding is a civil action, and a petition for a change of venue in such a case would come under the provisions of law applicable to changes of venue in civil cases. Section 10341, C. & M. Digest. However, we have examined the evidence on the question of the change of venue, and find that there was no error in overruling the motion. It would unduly extend this opinion to set out such evidence, and no useful purpose could be served thereby.

It appears from the evidence that the prosecutrix, Mabel Freeman, has a living husband, from whom she was separated at the time, but not divorced, he living at Hon, in Scott County, and she residing at Magazine, in Logan County, but having visited at Hon in June or July, where she saw her husband several times.

Many proper exceptions were saved to the admission, over appellant's objections, of testimony offered by the State, and for the refusal of the court to admit certain evidence offered by appellant, and to cross-examine the prosecuting witness, Mabel Freeman, in certain respects, with particular reference to the testimony of Mabel Freeman of non-access to her husband.

These objections and exceptions were attempted to be preserved by appellant in his motion for a new trial, as follows:

"Nine. The court erred and committed separate and several errors in excluding each and all the testimony admitted by the court over the objection and exception of the defendant.

"Ten. The court committed separate and several errors in excluding each and all of the testimony offered by the defendant and excluded by the court."

In paragraph nine, the word "excluding" is used when we think counsel intended the word "admitting" instead, but, even though the assignment be changed by substituting that word, still both assignments would be too general to bring before the trial court any particular objection and exception relied on, either in the admission or exclusion of testimony. It does not point out any particular testimony which was admitted or excluded by the court over the objection and exception of the defendant, nor does it name any witness whose testimony is complained of, and the assignment is therefore too general to raise any question on the admission and exclusion of evidence for consideration by this court.

In *Lomax* v. *State*, 165 Ark. 386, 264 S. W. 823, the assignment was "because the court erred in admitting testimony which was incompetent, irrelevant and immaterial to the issues involved in said cause." This court held that such an assignment was too indefinite, and, in disposing of the matter, said:

"This court has frequently held that a motion for a new trial on the ground that the court erred in admitting evidence on the part of the defendant, without naming the witnesses or pointing out the evidence, is too general, and does not present any question for review on appeal" (Citing cases).

To the same effect see *Armstrong* v. *State*, 171 Ark. 1136, 287 S. W. 590.

While we cannot reverse the case on these assignments of error, and because it is reversed on another ground hereinafter set out, we deem it proper to state that many of the exceptions, both to the admission and exclusion of testimony, were proper. We do not, how-

ever, think there was any error in the exclusion of the testimony offered on the part of appellant by witness, Dr. Ewing, that Dr. Miller suggested that they get some person with money to lay this child on, so that they could get their fees. But we are of the opinion that the questions asked by appellant's counsel as to the position in which the sexual intercourse was consummated, whether standing up or lying down, was competent, and should have been admitted.

On the question of non-access, the prosecuting witness cannot testify to non-access to her husband, as has been held by this court several times. In *Kennedy v. State,* 117 Ark. 113, 173 S. W. 842, L. R. A. 1916B, 1052, Ann. Cas. 1917A 1029, this court said:

"Under our statute, the mother is a competent witness in all cases of bastardy, unless she be legally incompetent in any case. It is not necessary that her testimony be corroborated. She may testify to any facts tending to prove the illegitimacy of the child, except the single fact of non-access of her husband."

The reason for the rule, as stated by the court in this case, is as follows:

"But we are in full accord with the doctrine that, on the ground of decency and morality and as a matter of public policy, a husband and wife should not be permitted to testify to non-access in affiliation proceedings. For, when they so testify, they proclaim their own lechery and their infidelity to each other, and reveal secrets that are so purely delicate and personal as to make it grossly indecent to advertise them to the world. By so doing they not only scandalize the sacred marital relation, but they cast a cloud upon the life of the unoffending child, and subject it to handicaps and embarrassments that are always most hurtful and most difficult to overcome. In the interest of society and for the benefit of the innocent offspring, this should never be permitted."

Again, in this same case, the court used this language: "She may testify to facts which tend to prove that access on the part of her husband within the period of gestation

was impossible, and, if she testified to facts of that character, there would be a question for the court or jury trying the issue to determine as to whether or not the presumption of legitimacy had been overcome. But, in this case, there is no such testimony. She does not testify to any fact that would warrant the conclusion that her husband did not have access within the period of gestation."

This case was followed in the later case reported in the same volume, page 408, [174 S. W. 1196], *Liles* v. *State ex rel. Johnson.* In this case the court said:

"The witness was permitted to testify, over appellant's objection, that she had not cohabitated with Stevens, her husband, for more than four years, at the time the appellant had the sexual intercourse with her."

The court reversed that case for the admission of such incompetent testimony.

In the case of *Jacobs* v. *Jacobs,* 146 Ark. 48, 225 S. W. 23, the court again followed the above cases, and there said:

"Nothing is allowed to impugn the legitimacy of a child, short of proof by fact showing it to be impossible that the husband could have been its father. This is the general rule on the subject."

It was agreed that the husband of the prosecuting witness resided at or near Hon, which was about thirty miles from Magazine, where she lived at all times within the period in which the child could have been begotten. Therefore it is a matter of common knowledge that access of her husband was not impossible. We have made this statement in view of the complaint made against instruction No. 1, given on the court's own motion, to which a proper exception was made and a proper assignment preserved in the motion for a new trial. This instruction is as follows:

"Gentlemen of the jury, the only question for you to determine is whether or not Charles E. Scott is the father of the bastard child of Mrs. Freeman, the prosecutrix. If a married woman gives birth to a child, the presumption is that it is her husband's. This presump-

tion may be overcome by evidence, and that is a question for you to determine in this case."

This instruction did not correctly declare the law, and it was not cured by any other instruction given by the court. It did not go far enough in defining the kind of testimony required to overturn the presumption that the husband of a married woman is the father of her child. Some instruction similar to appellant's requested instruction No. 9 should have been given to cure the defect in instruction No. 1 on the court's own motion, with the words "clear and abiding" stricken out. The requested instruction is as follows:

"If you should find from the testimony that the said Mabel Freeman gave birth to a child, on or before the time alleged in the complaint, and that, at the time the said child was or might have been begotten, the said Mabel Freeman had a living husband residing within a radius of 20 or 25 miles from her, she at Magazine, Arkansas, and he at Hon, Arkansas, although living apart from her, before you can convict the defendant of being the father of said child you must find from a fair preponderance of the testimony, to your clear and abiding satisfaction, that the said husband of her, the said Freeman, did not have access to his said wife, and did not, during such period of conception, have any acts of sexual intercourse with his said wife."

In this view of the case it must be reversed, and remanded for a new trial; but we deem it proper to say that, on a retrial, the evidence of non-access of the husband must be such as to convince the jury, by a preponderance of the evidence, of the impossibility of access. The evidence in the record before us is not sufficient to establish this fact.